UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

CIVIL MINUTES - GENERAL

Case No. SACV 11-1903 DOC (MLGx)                              Date: April 19, 2012

Title: AKH COMPANY INC.-V- MORRIS TIRE SERV., INC., ET AL.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

    Julie Barrera                                          Not Present
Courtroom Clerk                                  Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                              NONE PRESENT

PROCEEDING (IN CHAMBERS): ORDER STAYING RULING ON DEFAULT JUDGMENT AND REQUIRING EVIDENTIARY HEARING REGARDING THIS COURT'S PERSONAL JURISDICTION OVER DEFENDANT BRIAN MORRIS

      Before the Court are three motions: (1) a Motion to Dismiss for Lack of Personal Jurisdiction filed by Defendant Brian Morris (Dkt. 29); (2) a Motion to Strike Defendant Brian Morris's Motion to Dismiss for Lack of Personal Jurisdiction brought by Plaintiff AKH Company, Inc. (Dkt. 33); and (3) a Motion for Default Judgment brought by Plaintiff AKH Company, Inc. against Defendant Morris Tire Service, Inc.  Pl.'s Mot. for Default Judgement (Dkt. 27).

      The Court has considered the moving, opposing, and replying papers, and hereby: (1) STAYS the Motion to Dismiss until an evidentiary hearing is held on June 25, 2012, at 1:30 p.m.; (2) DENIES the Motion to Strike; and (3) STAYS the Motion for Default Judgment until Plaintiff notifies this court that it has obtained a relief from stay in the bankruptcy case.[1]

    I.    BACKGROUND

---

[1]The Court finds these matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local Rule 7-15.

### A.     FACTS ALLEGED BY PLAINTIFF

Taken as true and in the light most favorable to Plaintiff, the facts alleged by AKH Co., Inc. ("Plaintiff") are as follows:

Plaintiff is a California corporation based in Orange County which is in the business of wholesaling tires. Compl. ¶¶ 4, 15. Defendant Morris Tire Service, Inc. ("Morris Tire") is a North Carolina corporation with its principal place of business in North Carolina; Morris Tire is in the business of retailing tires. *Id.* ¶ 5. Defendant Tracy Morris ("Tracy") is the "Secretary" of Morris Tire; she is a citizen of North Carolina. *Id.* ¶¶ 6, 13. Defendant Brian Morris ("Brian") is the "President" of Morris Tire; he is also a citizen of North Carolina. *Id.* ¶¶ 7, 12. Brian and Tracy are alleged to be the alter egos and co-equal owners of Morris Tire. *Id.* ¶¶ 9-11.

On May 5, 2008, Tracy, in her capacity as Secretary of Morris Tire, signed a "Credit Agreement" with Plaintiff. *Id.* ¶ 14. The Credit Agreement specified that "I hereby agree to pay [Plaintiff] in accordance with the terms and conditions as shown on the invoices."[2] *Id.*; *see also* Compl. Ex. A. Brian Morris is listed as the "President" of Morris Tire on the Credit Agreement; he and Tracy allegedly held themselves out as personally liable for the company's debts. Compl. ¶ 10; Compl. Ex. A. Since that time, Plaintiff and Defendants had an ongoing business relationship whereby Plaintiff sold Defendants tires in exchange for payment as indicated on Plaintiff's invoices. Compl. ¶ 15.

On July 28, 2011, Morris Tire ordered tires from Plaintiff; this order is reflected by an invoice dated August 2, 2011, for $126,736.36. *See* Pl.'s Opp'n to Brian Morris's Mot. To Dismiss ("Opp'n") (Dkt. 32) Ex. B. On August 26, 2011, Morris Tire again ordered tires from Plaintiff; this order is reflected by an invoice dated August 29, 2011, for $105,562.90. *See id.* Both of these invoices state: "Bill to: Brian K. Morris, Morris Tire Service, Inc., P.O. BOX 128, 734 SOUTH MAIN STREET, STAR NC 27356." *See id.* Plaintiff alleges that the tires were delivered as promised. Compl. ¶ 16.

On November 4, 2011, Plaintiff sent Morris Tire a balance statement indicating that, based upon the invoices from August 2 & 29, Morris Tire owed Plaintiff $217,302.26. *See* Compl. ¶ 18; Compl. Ex. B. The account was listed as belonging to "Morris Tire Service" and the "Bill to" information was identical to that listed on the invoices. *See id.*

Morris Tire failed to pay Plaintiff any of the amounts due. Compl. ¶ 19. Plaintiff alleges that Morris Tire did not respond to its demands for payment until December 1, 2011. *Id.* ¶ 20. On that day, Plaintiff received an email, allegedly from Tracy, stating in its entirety: "I am out of the office today. I will be sending a check by Friday for a portion of what is owed. Sorry for the delay. Tracy

---

[2]The address listed for Morris Tire on the Credit Agreement is: "PO Box 128, 734 S. Main St., Star, NC 27356." *See* Compl. Ex. A.

Morris." Compl. ¶ 21; Compl. Ex. C. No payment was ever received by Plaintiff. Compl. ¶ 19.

Based on this course of conduct, Plaintiff seeks to recover $217,302.26 from Morris Tire, or to hold Brian and/or Tracy personally liable for the debt as the alter egos of Morris Tire.

### B. BRIAN MORRIS'S POSITION

Brian contends that he is not subject to the personal jurisdiction of this Court because he is no longer involved in any capacity with Morris Tire and was not involved with the company at the time these disputed orders were placed. Brian Morris's Mot. to Dismiss (Dkt. 29) at 3. He makes this contention on the grounds that he and Tracy, formerly husband and wife and co-equal owners of Morris Tire, separated on November 30, 2010, and became legally divorced on March 28, 2011. *See id.*; *id.* at 6 ("Declaration of Brian Morris"). As a result of the divorce, as of March 28, 2011, Tracy allegedly became the sole owner and operator of Morris Tire and Brian ceased any and all affiliation with the business. *See id.* In support of this contention, Brian presents a judicially noticeable "consent order" from a court in Montgomery County, North Carolina, "File No. 10 CVD 638," stating:

> [Tracy] shall have sole ownership and possession of the business known as Morris Tire Services, Inc. . . . as well as all personally owned real estate, post office box and bank accounts and personal property associated with [Morris Tire], together with all accounts receivable as well as all debts associated with [Morris Tire].

*See* Brian Morris's Mot. to Dismiss (Dkt. 29) Ex. 1. Additionally, the consent order states that Brian was not to "form a tire business," not to "work as an employee for any tire business," nor "transact any business with current or former customers of [Morris Tire]" for a certain period of time in the North Carolina region. *See id.*

In addition to this consent order, Brian also submits a sworn declaration reaffirming the contents of the consent order, his disassociation from Morris Tire effective March 28, 2011, and further stating that he has never even been to California. *See* Brian Morris's Mot. to Dismiss (Dkt. 29) at 6 ("Declaration of Brian Morris").

### C. RECENT DEVELOPMENTS

On March 16, 2012, Morris Tire voluntarily filed for Chapter 11 bankruptcy protection in the Middle District of North Carolina. *See In re Morris Tire Serv., Inc.*, No. 12-10362 (Bankr. M.D.N.C.), Chapter 11 Voluntary Petition (Dkt. 1).[3] The "Chapter 11 Voluntary Petition" names

---

[3]Further references to the bankruptcy case in North Carolina will be made to its underlying docket; such references will be marked "(Bankr. Dkt.)" to distinguish those references from citations to the underlying docket in this Court.

Plaintiff as one of Morris Tire's creditors, listing a claim by Plaintiff in the exact same amount that Plaintiff claims here in the present action.[4]  *See id* at 4.  Brian is listed as a "co-debtor," along with Tracy, with respect to the claim made by Plaintiff.  *Id.* at 18.  The Chapter 11 Voluntary Petition notices this proceeding to the bankruptcy court.  *Id.* at 22.  Throughout the Chapter 11 Voluntary Petition, Tracy repeatedly signed on behalf of Morris Tire, listing her position with the company as "President."  *See generally id.*

Other documents from the bankruptcy docket also indicate that Tracy is the sole owner/operator of Morris Tire.  *See* Order Designating Tracy Morris, President, to Act on Behalf of Corporation (Bankr. Dkt. 7); Consultant's Report by Bankruptcy Administrator (Bankr. Dkt. 17) (naming Tracy as "President and 100% shareholder" of Morris Tire and discussing Tracy's ascension to that position by virtue of her March 28, 2011, divorce from Brian).

## II.  LEGAL STANDARD

There are two types of personal jurisdiction: general and specific.  *See Data Disc, Inc. v. Sys. Tech. Associates, Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977).  General personal jurisdiction exists when the defendant can be considered "at home" in the forum state; this situation arises either when the defendant is domiciled in the forum state or when the defendant's activities there are substantial, systematic, and continuous.  *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445 (1952).  When general personal jurisdiction exists, a defendant may be sued in the forum state for claims unrelated to its activities there.  *Id.* at 446.

Less needs to be shown in order to establish specific personal jurisdiction, but, as the name implies, specific personal jurisdiction is more limited in its reach than general personal jurisdiction.  *Data Disc, Inc.*, 557 F.2d at 1287.  Specific personal jurisdiction exists where "certain minimum contacts" exist between the defendant and the forum state.  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  These minimum contacts are shown by a three-part test: (1) the defendant purposefully directed activities at the forum state, thereby availing himself of the protections of that state's laws; (2) the claim must arise out of these forum-directed activities; and (3) the exercise of personal jurisdiction must not be so unreasonable as to "offend traditional notions of fair play and substantial justice."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985); *Int'l Shoe Co.*, 326 U.S. at 316; *Data Disc, Inc.*, 557 F.2d at 1287.  If a plaintiff seeking to invoke a court's specific personal jurisdiction can satisfy the first two prongs of the three-part inquiry, the burden shifts to the defendant to show that the exercise of jurisdiction in this instance would be unreasonable.  *Burger King Corp.*, 471 U.S. at 477.

---

[4]It appears, however, that Plaintiff's address may be incorrectly stated in the bankruptcy documents: "Nanaheim Blvd." as opposed to "N. Anaheim Blvd."  This may be the reason Plaintiff has failed to properly address the bankruptcy issue to this Court.

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss an action against him for want of a court's personal jurisdiction over him. F.R.C.P. 12(b)(2). The moving defendant may attack either the plaintiff's theory of personal jurisdiction, or the facts supporting the theory. *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 153 (2d Cir. 1999). When the motion attacks the facts supporting the jurisdictional theory, the court must decide the motion based on competent evidence. *See Data Disc, Inc.*, 557 F.2d at 1289 n.5. Where the factual accounts are conflicting and credibility is at issue, the court has discretion to order an evidentiary hearing to address the jurisdictional issues. *Data Disc, Inc.*, 557 F.2d at 1285 ("Because there is no statutory method for resolving [a Rule 12(b)(2) motion], the mode of its determination is left to the trial court." (citing *Gibbs v. Buck*, 307 U.S. 66, 71-72 (1939)); *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981) ("In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway.").

If an evidentiary hearing on the jurisdictional question is held, the plaintiff must prove the existence of facts supporting jurisdiction over the defendant by a preponderance of the evidence. *Data Disc, Inc.*, 557 F.2d at 1285; *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (noting that the plaintiff bears the burden even though she is not the moving party). The court, in its discretion, may allow limited discovery on the jurisdictional issues so as to allow a plaintiff an opportunity to develop its set of facts supporting jurisdiction. *See Data Disc, Inc.*, 557 F.2d at 1285 n.1.

Until an evidentiary hearing on the jurisdictional issues is held, the court must accept as true a plaintiff's allegations and resolve disputes between the parties' affidavits in favor of the plaintiff. *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). Until the evidentiary hearing is held, a plaintiff need only make a prima facie showing that jurisdiction over the defendant is proper in order for the matter to proceed. *Id.*

### III. DISCUSSION

Plaintiff bases its theory of personal jurisdiction on the existence of a contractual relationship between Plaintiff and Defendant Brian Morris, acting as the alter ego of Morris Tire.[5] Pl.'s Opp'n to Brian Morris's Mot. to Dismiss ("Opp'n") (Dkt. 32) at 7-11.

---

[5] Though Plaintiff gamely contends that it can meet the substantial burden of proving the "systematic, continuous, and substantial" contacts necessary to assert general personal jurisdiction over Brian, this Court is not persuaded that Plaintiff can meet that burden. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-415 (1984) (holding that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of [general personal jurisdiction]"). As this controversy arises out of a single, limited contractual relationship, the Court finds that specific personal jurisdiction is more suitable.

"Alter ego" is a theory whereby the actions of a corporate party (in this case, Morris Tire) can be imputed to another party (in this case, Brian) such that if specific personal jurisdiction exists over the corporate party, it also exists over the other. *See Harris Rutsky & Co. Ins. Services, Inc.*, 328 F.3d at 1134-35. In order to show alter ego, a plaintiff must make out a prima facie case that (1) "there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist;" and (2) "that failure to disregard [their separate identities] would result in fraud or injustice." *Id.* (alterations in original) (citing *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001)).

Thus, the first inquiry is whether Morris Tire purposefully availed itself of the protections of California's laws such that specific personal jurisdiction over Morris Tire exists. If it has, the second inquiry is whether Brian was the alter ego of Morris Tire such that Morris Tire's actions may be imputed to him, thereby allowing this Court to assert specific personal jurisdiction over Brian. *See Harris Rutsky & Co. Ins. Services, Inc.*, 328 F.3d at 1134 ("Since we have already determined that [Plaintiff] has made out a prima facie case that [the subsidiary corporation] had the necessary contacts with the forum, the only question before us is whether those contacts may be attributed to [the parent corporation].").

### A.  SPECIFIC PERSONAL JURISDICTION OVER MORRIS TIRE

Plaintiff has made a prima facie case that this Court has specific personal jurisdiction over Morris Tire. The Credit Agreement, as well as the ongoing purchases of tires, serve as the activities Morris Tire purposefully directed at California, thereby availing itself of this state's laws and protections. *Data Disc, Inc.*, 557 F.2d at 1287. This dispute certainly arises out of those forum-directed activities, as the nature of this action is a breach of contract claim seeking payment for tires sold pursuant to the Credit Agreement. *See id.* Plaintiff has thus stated a prima facie case for asserting specific personal jurisdiction over Morris Tire. *See Harris Rutsky & Co. Ins. Services, Inc.*, 328 F.3d at 1129.

### B.  BRIAN MORRIS AS THE ALTER EGO OF MORRIS TIRE

Having determined that this Court has specific personal jurisdiction over Morris Tire, the question then turns to whether Morris Tire's actions may be imputed to Brian such that this Court may also assert specific personal jurisdiction over him. *See Harris Rutsky & Co. Ins. Services, Inc.*, 328 F.3d at 1134.

Plaintiff supports its claim that Brian was the alter ego of Morris Tire with a number of allegations. First, Brian was listed as the "President" of Morris Tire on the Credit Agreement signed by Tracy in 2008, thereby creating a contractual relationship between Plaintiff and himself as the alter ego of Morris Tire. Opp'n at 10. Second, Plaintiff submits the sworn declaration of Sergio Andonian, an employee of Plaintiff, stating that since May 5, 2008, Mr. Andonian has "in the ordinary course of business and on numerous occasions, personally spoken to Defendant Brian Morris regarding Morris

Tire's invoice and transactions with [Plaintiff]." Decl. Of Sergio Andonian ¶ 6 (Dkt. 32). Finally, Plaintiff points to the disputed invoices themselves, which clearly read: "Bill To, Brian K. Morris, Morris Tire Service, Inc." and reference the same P.O. Box address listed on the Credit Agreement. Opp'n Exs. B & C.

The Court agrees that Plaintiff has made a prima facie showing that Brian was the alter ego of Morris Tire. It has shown that unity of interest and ownership exists by alleging that Brian was the co-equal owner of Morris Tire, that Brian personally directed the activities of Morris Tire (such as ordering tires from Plaintiff), and that the tires sent by Plaintiff were received by and billed to Brian. Plaintiff has also shown that a failure to disregard the separateness of Brian and Morris Tire would result in fraud by showing that, if Morris Tire is only held individually liable, Brian would be able to escape liability after having allegedly held himself out as personally liable for the debts of Morris Tire. Because Plaintiff has made a showing that Morris Tire was the "mere instrumentality" of Brian, Plaintiff has made a prima facie showing that Brian was the alter ego of Morris Tire. *See Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995). Based on this prima facie showing, Morris Tire's actions may be imputed to Brian and this Court may assert specific personal jurisdiction over him. *Harris Rutsky & Co. Ins. Services, Inc.*, 328 F.3d at 1134.

### C.   EFFECT OF CONFLICTING FACTUAL ACCOUNTS

Brian contests the factual underpinnings of Plaintiff's jurisdictional theory by asserting that, by virtue of his March 28, 2011, divorce from Tracy giving her sole ownership and control over Morris Tire, he was not the alter ego of Morris Tire at the time the disputed orders were placed. *See* Brian Morris's Mot. to Dismiss (Dkt. 29) at 5. If he was not the alter ego at that time, Morris Tire's actions may not be imputed to him and thus this Court may not assert personal jurisdiction over Brian. *Harris Rutsky & Co. Ins. Services, Inc.*, 328 F.3d at 1134.

Because Brian submits materials that contradict the facts supporting Plaintiff's theory of personal jurisdiction, and because the credibility of those materials is at issue, an evidentiary hearing concerning these jurisdictional questions is warranted. *See Data Disk, Inc.*, 557 F.2d at 1285. By virtue of the judicially noticeable consent order from his divorce, Brian presents a compelling case that, as of the time the disputed orders were placed, he no longer had any affiliation with Morris Tire, and as such he lacked the requisite forum-directed activities necessary for this Court to assert jurisdiction over him. *See* Brian Morris's Mot. to Dismiss (Dkt. 29) Ex. 1. The fact that invoices issued only a few months after a change in ownership occurred still list Brian as the person at Morris Tire responsible for billing can very easily be explained by a failure on Tracy's part to update her vendors with Morris Tire's current corporate information.[6] Additionally, Plaintiff's own exhibit shows Tracy, not Brian,

---

[6]Furthermore, it should be noted that the address listed on the invoices is a P.O. Box, the same P.O. Box listed on the original Credit Application. Given that the consent order also gave Tracy all P.O. Boxes affiliated with Morris Tire, these identical addresses

responding to its request for payment and vouching for Morris Tire's forthcoming payments. *See* Compl. Ex. C.

Further, other judicially noticeable documents also lead to the more than plausible conclusion that, as of the time the disputed orders were placed, Brian had no affiliation with Morris Tire (and, by alter ego extension, the State of California). Documents from the North Carolina bankruptcy proceeding repeatedly indicate that Tracy is the sole owner/operator of Morris Tire, and that Tracy gained this "President and 100% shareholder" position by virtue of her March 28, 2011, divorce from Brian.[7] *See* Bankr. Dkt. 1; Bankr. Dkt. 7; Bankr. Dkt. 17.

In its Opposition, Plaintiff chooses not to address Brian's arguments. As such, this Court is left with conflicting factual accounts as to whether Brian was the alter ego of Morris Tire at the time the disputed orders were placed such that Morris Tire's forum-directed activities at that time may be attributed to him. While Plaintiff has made a prima facie showing that this Court has specific personal jurisdiction over Brian, the volume of material suggesting otherwise merits an evidentiary hearing in order to sort out exactly what Brian's relationship to Morris Tire was at the time of the disputed tire orders.

Accordingly, the parties are ORDERED to attend an evidentiary hearing on June 25, 2012, at 1:30 p.m. that is limited to determining whether this Court has specific personal jurisdiction over Brian. At the hearing, Plaintiff must prove by a preponderance of the evidence that, as of the time of the disputed tire orders, Brian was still directing activities at this state sufficient for this Court to assert jurisdiction over him. *Data Disc, Inc.*, 557 F.2d at 1285. Plaintiff can prove this by showing that, as of the time of the disputed tire orders, Brian was acting as the alter ego of Morris Tire such that Morris Tire's contractual relationship with Plaintiff would be sufficient for this Court to assert specific personal jurisdiction over Brian as well. Plaintiff is also directed to address Brian's factual contention, namely that as a result of his March 28, 2011, divorce, he no longer had any interest in Morris Tire. Plaintiff should be on notice that as long as Brian can prove he is not in violation of his divorce's consent order, it will be very difficult for Plaintiff to prove by a preponderance of the evidence that Brian was acting as the alter ego of Morris Tire when the disputed tire orders were placed. To that effect, Brian may produce documents, such as bank and tax statements, showing that he has not been receiving payment from Morris Tire since his divorce; documents showing that he is in compliance with the consent order from his divorce would also be particularly helpful.

In order to assist Plaintiff in making its case, Plaintiff may conduct discovery limited to the jurisdictional question of whether or not Brian was the alter ego of Morris Tire at the time the

---

undermine the conclusion that Brian ordered the tires at issue.

[7]However, Morris Tire's Chapter 11 Voluntary Petition does list Brian as a "co-debtor." *See* Bankr. Dkt. 1 at 18.

disputed tire orders were placed such that Morris Tire's actions may be imputed to him.

Finally, given that Brian is in North Carolina, Brian need not personally appear at the evidentiary hearing. However, if Plaintiff requires Brian's presence at the hearing, it may file a motion on or before May 7, 2012, requesting that Brian make a special appearance for the purpose of contesting personal jurisdiction. Brian shall file an opposition, if at all, on or before May 14, 2012. Plaintiff shall file a reply, if at all, on or before May 21, 2012, at which point the matter will automatically be taken under submission. If this Court ultimately finds that it lacks personal jurisdiction over Brian, the Court may order Plaintiff to reimburse Brian for his reasonable personal travel and lodging expenses arising from his special appearance.

## IV. MOTION TO STRIKE

Plaintiff argues that because Brian has already brought a Rule 12 motion, his current Rule 12(b)(2) motion should be stricken under Rule 12(f) because he waived any defenses not raised in his first motion. Pl.'s Mot. to Strike (Dkt. 33).

The Court DENIES this motion. Brian's first motion to dismiss for a lack of personal jurisdiction was not a Rule 12 motion; it was instead improperly brought under the California Code of Civil Procedure. *See* Brian Morris's Mot. to Quash Summons (Dkt. 6). Federal courts sitting in diversity apply state substantive law and federal procedural law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). In this Court's order denying the motion to quash, the Court recognized counsel's mistake and instructed counsel that the appropriate motion would be made under the Federal Rules of Civil Procedure. *See* Order (Dkt. 28). Rather than attempt to analogize the California law cited by counsel in the motion to quash, the Court simply denied the motion. *Id.* The Court will not further penalize Brian's counsel for now having filed the motion under the correct law.

## V. MOTION FOR DEFAULT JUDGMENT

Plaintiff seeks the entry of a default judgment against Morris Tire. *See* Pl.'s Mot. (Dkt. 27). Due to Morris Tire's March 16, 2012, bankruptcy filing in the Middle District of North Carolina, this proceeding is automatically STAYED as against Morris Tire by operation of law until Plaintiff obtains relief from stay from the bankruptcy court. *See* 11 U.S.C. § 362.

## VI. CONCLUSION

Plaintiff has made a prima facie showing that this Court has specific personal jurisdiction over Defendant Brian Morris, but due to the conflicting factual allegations, an evidentiary hearing on the issue is warranted and final resolution on the matter is STAYED until that time. The parties are ORDERED to attend an evidentiary hearing on June 25, 2012, at 1:30 p.m. If Plaintiff desires Brian's presence at that hearing, Plaintiff must file a motion on or before May 7, 2012, requesting Brian's

presence.  Brian shall file an opposition, if at all, on or before May 14, 2012.  Plaintiff shall file a reply, if at all, on or before May 21, 2012, at which point the matter will automatically be taken under submission.

Plaintiff may conduct limited discovery pertaining to the question of whether Brian was the alter ego of Morris Tire as of the time of the disputed orders.

Plaintiff's Motion to Strike is DENIED.

By operation of law, this proceeding is automatically stayed as against Morris Tire until Plaintiff obtains relief from stay from the Bankruptcy Court for the Middle District of North Carolina.  *See* 11 U.S.C. § 362.  A ruling on Plaintiff's Motion for Default Judgment against Morris Tire is accordingly STAYED until that time.

The Clerk shall serve this minute order on all parties to the action.